**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**BENJAMIN URSIC,**

        **Petitioner,**

        **v.**

**WARDEN, BELMONT
CORRECTIONAL INSTITUTION,**

        **Respondent.**

        **CASE NO. 2:20-CV-5503
JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Kimberly A. Jolson**

**ORDER and
REPORT AND RECOMMENDATION**

Petitioner, a state prisoner, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his convictions after a jury trial in the Harrison County Court of Common Pleas on two counts of felonious assault and one count of failure to comply with the order or signal of a police officer. This matter is before the Court on the Petition, Respondent's Return of Writ, Petitioner's Reply, and the exhibits of the parties.

For the reasons that follow, it is **RECOMMENDED** that the petition for a writ of habeas corpus be dismissed.

Petitioner's Motion for a Stay (Doc. 4) is **DENIED**.

## I.    BACKGROUND

The Ohio Seventh District Court of Appeals summarized the facts and procedural history of the case as follows:

> {¶2} On June 4, 2017, at approximately 3:00 a.m. Appellant's neighbor, Howard Landkrohn ("Landkrohn"), called police after hearing two gun shots coming from Appellant's residence. While still on the phone with the dispatcher, Landkrohn observed Appellant drive away from his residence in his white Jeep. Landkrohn described his neighbor's Jeep to the dispatcher, including that it had a broken tail light. While en route to Appellant's residence, Harrison County Sheriff's deputies Tony Sedgmer and Ben Chaney, driving separate police vehicles, spotted a white Jeep sitting at an intersection as they approached on US Route 250. A dash camera

video from Deputy Chaney's police cruiser was admitted at trial and shown to the jury. The video shows that the deputies slowed as they approached the intersection and Deputy Sedgmer aimed a spotlight in the driver's side window. Being familiar with Appellant from previous interactions, he recognized Appellant as the driver. Both deputies immediately activated their lights and sirens and attempted to surround Appellant's vehicle. Appellant slowly emerged from the intersection on to US Route 250. He proceeded to maneuver around the two police vehicles and quickly sped off. The video shows the damaged tail light on the Jeep as noted by Landkrohn in his 911 call. Appellant fled on Route 250 for a short time before turning on to a nearby dirt road and then cutting through a field filled with boats and vehicles to get back onto North Bay Road. The pursuit continued on North Bay Road, a residential neighborhood, for about three minutes at approximately 70 mph before the deputies radioed that they were calling off the chase to avoid a traffic accident.

{¶3} The deputies drove to Appellant's residence where Muskingum Watershed Conservancy Rangers were interviewing Appellant's girlfriend. They continued their investigation there until another call came in that a vehicle matching the description of Appellant's Jeep was sitting at the top of a hill on an old logging road in the woods with its headlights on. While this road was now used by ATVs, it was not open to vehicular traffic. Both deputies and Ranger Troy Noice drove to the logging road. They all exited their vehicles. The deputies walked ahead, periodically switching their flashlights on and off in an attempt to see where they were going but avoid detection. Ranger Noice was farther behind them but was wearing a body camera which recorded a portion of the incident. The recording was admitted at trial and played for the jury. The deputies continued walking side-by-side up the road until they could see a white Jeep facing downhill towards them with the engine running and the headlights on. As they approached within approximately 50 yards from the Jeep, Appellant was spotted inside. According to the testimony of Deputy Sedgmer at trial and as can be seen on the body camera video presented to the jury, Appellant began driving towards the deputies, revving the engine. Deputy Sedgmer ordered Appellant to stop. Appellant continued down the hill toward the deputies, forcing them to take cover behind nearby trees. Appellant continued driving downhill toward the deputies until swerving off the road and hitting the tree the deputies were hiding behind. After hitting the tree, Appellant reversed direction on the road and attempted to flee back up the hill in the opposite direction from where he had come. He eventually abandoned the vehicle and fled on foot. Appellant was apprehended later that morning by Ranger Noice as he was walking in Landkrohn's backyard.

{¶4} On December 11, 2017, Appellant was indicted by the Harrison County Grand Jury on two counts of felony assault on a police officer in violation of R.C. 2903.11(A)(2) and (D)(1)(a), felonies in the first degree; and one count of felony failure to comply with an order of a police officer in violation of R.C. 2921.331(B) and (C)(5)(a)(ii), a felony of the third degree. The matter proceeded to a jury trial on October 4, 2018. Appellant was found guilty on all counts. The trial court

sentenced Appellant to four years of incarceration on each conviction for assault on a police officer and one year for failure to comply, to be served consecutively, for a total stated prison term of nine years.

{¶5} Appellant filed this timely appeal.

ASSIGNMENT OF ERROR NO. 1

CONSECUTIVE [SIC] SENTENCES WERE MANDATED AS THE APPELLANT'S CONVICTION FOR FAILURE TO COMPLY SHOULD HAVE MERGED INTO HIS CONVICTIONS OF FELONIOUS ASSAULT ON POLICE OFFICERS.

***

ASSIGNMENT OF ERROR NO. 2

THERE WAS INSUFFICIENT EVIDENCE TO FIND THE APPELLANT GUILTY OF FELONIOUS ASSAULT AND HIS CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

*State v. Ursic*, 7th Dist. No. 18HA0006, 2019 WL 6724550, at *1-5 (Ohio Ct. App. Dec. 9, 2019). On December 9, 2019, the appellate court affirmed the trial court's judgment. *Id*. On December 19, 2019, Petitioner filed a motion to certify a conflict; however, on June 1, 2020, the appellate court denied that motion. *State v. Ursic*, 7th Dist. No. 18HA0006, 2020 WL 3639995 (Ohio Ct. App. June 1, 2020). On July 21, 2020, the Ohio Supreme Court declined to accept jurisdiction of the appeal. *State v. Ursic*, 159 Ohio St.3d 1445 (Ohio 2020).

Petitioner also pursued state collateral relief. Petitioner filed an application to reopen the appeal pursuant to Ohio Appellate Rule 26(B), asserting that he had been denied the effective assistance of appellate counsel because his attorney failed to raise on appeal a claim of a deficient Indictment and the denial of the right to a speedy trial. (Doc. 5, PAGEID # 230, 243). On June 29, 2020, the appellate court denied the Rule 26(B) application for failure to provide citations or references to the portions of the record and failure to present a colorable claim of ineffective

assistance of counsel.  (*Id.*, PAGEID # 242).  Petitioner apparently did not file an appeal.[1]  On

March 6, 2020, through counsel, Petitioner filed a petition for post-conviction relief, asserting that

his convictions on failure to comply and felonious assault should have been merged at sentencing;

that the evidence is constitutionally insufficient to sustain his conviction on felonious assault; and

that "remaining facts, dehors the record, had the[y] been presented to the jury on the initial

indictment would have resulted in a not-guilty verdict." (*Id.*, PAGEID # 247).  On June 1, 2020,

Petitioner's attorney filed a motion to withdraw.  (*Id.*, PAGEID # 272).  Thereafter, on June 19,

2020, Petitioner requested a stay of post-conviction proceedings pending further investigation and

his attempt to find new counsel.  (*Id.*, PAGEID # 273).  On June 26, 2020, the trial court granted

Petitioner's request for a stay, directing him to file a motion to have the stay removed at a later

date.  (*Id.*, PAGEID # 275).

On October 20, 2020, Petitioner filed this *pro se* habeas corpus petition pursuant to 28

U.S.C. § 2254.  (Doc. 1).  Petitioner asserts that his convictions on felonious assault and failure to

comply with an order or signal of a police officer violate the Double Jeopardy Clause (claim one);

and that the evidence is constitutionally insufficient to sustain his convictions on felonious assault

(claim two).  It is the Respondent's position that Petitioner's claims lack merit.

## II.   REQUEST FOR A STAY

Petitioner has filed a Motion to Stay proceedings pending resolution of state post-

conviction proceedings.  (Doc. 4).  On March 6, 2020, Petitioner filed his state post-conviction

petition; however, as discussed, on June 26, 2020, the trial court granted Petitioner's request for a

stay to conduct further investigation and obtain new counsel.  (Doc. 5, PAGEID # 246, 273, 275).

The record indicates that Petitioner's state post-conviction proceedings remain stayed at his

---

[1] Petitioner states that he could not file a timely appeal in the Ohio Supreme Court because the prison was in lockdown due to the COVID-19 pandemic.  (*Petition,* Doc. 1, PAGEID # 5).

request.  Petitioner now also requests a stay of this habeas corpus action to obtain new counsel and amend the petition to add unidentified new claims upon exhaustion of state post-conviction proceedings.  The record, however, reflects no basis for a stay.

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a petitioner must first exhaust his claims in the state courts before presenting them in federal court. 28 U.S.C. § 2254(b); *see Rockwell v. Yukins*, 217 F.3d 421, 423 (6th Cir. 2000).  If a habeas petitioner has the right under state law to raise a claim by any available procedure, the claim is not exhausted. 28 U.S.C. § 2254(b), (c).  Additionally, a constitutional claim for relief must be presented to the state's highest court in order to satisfy the exhaustion requirement.  *O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999); *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990).  A habeas petitioner bears the burden of demonstrating that exhaustion of the available state-court remedies with respect to the claims presented for federal habeas review.  *Prather v. Rees*, 822 F.2d 1418, 1420 n.3 (6th Cir. 1987).

A district court may stay a "mixed petition" containing both exhausted and unexhausted claims to permit a petitioner to present his unexhausted claim to the state courts, and then to return to federal court for review.  *Rhines v. Weber*, 544 U.S. 269 (2005).  But stays under these circumstances should be granted sparingly.  *Id.* at 277 (recognizing that "[s]taying a federal habeas petition frustrates AEDPA's objective of encouraging finality by allowing a petitioner to delay the resolution of the federal proceedings" and that it "undermines AEDPA's goal of streamlining federal habeas proceedings by decreasing a petitioner's incentive to exhaust all his claims in state court prior to filing his federal petition").  A stay may be warranted only where "the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics."  *Id*.

Here, Petitioner has presented no unexhausted claims for relief. So the record reflects no basis for a stay. *See Wycuff v. Haviland*, No. 2:19-cv-3549, 2020 WL 529299, at *6 (S.D. Ohio Feb. 3, 2020) (a stay is appropriate only if the petitioner had good cause for failing to exhaust state court remedies, his unexhausted claims are potentially meritorious, and there is no indication that he has engaged in intentionally dilatory litigation tactics) (citing *Rhines v. Weber*, 544 U.S. 269, 277 (2005)). Importantly, courts within the Sixth Circuit have declined to extend the *Rhines* stay-and-abeyance procedure to petitions that do not include unexhausted claims. *Id*. at *6 (citations omitted); *see also Elmore v. Shoop*, No. 1:07-cv-776, 2020 WL 3410764, at *13 (S.D. Ohio June 22, 2020) ("[T]he stay-and-abeyance remedy set forth in *Rhines* [ ] applies only to 'mixed' petitions containing both exhausted and unexhausted claims.").

Further, none of the claims now pending in Petitioner's state post-conviction petition appear to be potentially meritorious as that term is defined in *Rhines*. Petitioner asserts in his state post-conviction petition some of the same claims he raised on direct appeal. Those claims most certainly will be barred from further review in post-conviction proceedings under Ohio's doctrine of *res judicata*. *See Hand v. Houk*, 871 F.3d 390, 408 (6th Cir. 2017) (citing *State v. Perry*, 10 Ohio St.2d 175 (1967); *State v. Cole,* 2 Ohio St.3d 112 (1982)). As a result, those claims would not, in any event, be "potentially meritorious" so as to warrant a stay under *Rhines*. *See Rodano v. Marquis,* No. 1:18-cv-2770, 2020 WL 994652, at *5 (N.D. Ohio Mar. 2, 2020) (holding that procedurally barred claims are not "potentially meritorious" as defined in *Rhines* and no stay would be warranted for a petitioner to pursue a motion that has little, if any, likelihood of success) (citing *Toledo v. Banks*, No. 2:09-cv-614, 2010 WL 2620593, at *5 (S.D. Ohio June 25, 2010), *report and recommendation adopted by* 2010 WL 3061514 (S.D. Ohio Aug. 2, 2010) (other

citations omitted)). Petitioner also asserts that unidentified facts would have exonerated him, but he presents grounds in support of this allegation. (Doc. 5, PAGEID # 247).[2]

Finally, Petitioner's post-conviction petition in state court has been stayed at his request for approximately one year, and Petitioner fails to explain the cause for such lengthy delay. Given all of these reasons, Petitioner's Motion to Stay (Doc. 4) is **DENIED.**

## III.    STANDARD OF REVIEW

Turning to the Petition itself, because Petitioner seeks habeas relief under 28 U.S.C. § 2254, the Antiterrorism and Effective Death Penalty Act ("AEDPA") governs this case. The United States Supreme Court has described AEDPA as "a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court" and emphasized that courts must not "lightly conclude that a State's criminal justice system has experienced the 'extreme malfunction' for which federal habeas relief is the remedy." *Burt v. Titlow*, 571 U.S. 12, 20 (2013) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)); *see also Renico v. Lett*, 559 U.S. 766, 773 (2010) ("AEDPA . . . imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt.") (internal quotation marks, citations, and footnote omitted).

AEDPA limits the federal courts' authority to issue writs of habeas corpus and forbids a federal court from granting habeas relief with respect to a "claim that was adjudicated on the merits in State court proceedings" unless the state-court decision either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

---

[2] Petitioner submitted an Affidavit from Attorney Rhys B. Cartwright Jones regarding Jones' review of the case. (Doc. 5, PAGEID # 269–70).

28 U.S.C. § 2254(d).

The United States Court of Appeals for the Sixth Circuit has explained the meaning

of the standards found in § 2254(d)(1) as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ "if the
> state court applies a rule different from the governing law set forth in our cases, or
> if it decides a case differently than we have done on a set of materially
> indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694, 122 S.Ct. 1843, 152
> L.Ed.2d 914 (2002) (citing *Williams v. Taylor*, 529 U.S. 362, 405–06, 120 S.Ct.
> 1495, 146 L.Ed.2d 389 (2000)). Under the "unreasonable application" clause, a
> federal habeas court may grant the writ if the state court identifies the correct
> governing legal principle from the Supreme Court's decisions but unreasonably
> applies the law or bases its decision on an unreasonable determination of the facts,
> in light of the record before the state court. *Harrington v. Richter*, 562 U.S. 86, 100,
> 131 S.Ct. 770, 178 L.Ed.2d 624 (2011); *Williams*, 529 U.S. at 412–13, 120 S.Ct.
> 1495.

*Lang v. Bobby*, 889 F.3d 803, 810 (6th Cir. 2018), *cert. denied*, 139 S. Ct. 798, (2019).

Under § 2254(d)(2), a state court's factual determination is not "unreasonable" merely

because the federal habeas court would have reached a different conclusion. *Wood v. Allen*, 558

U.S. 290, 301 (2010). Instead, a state court's factual findings are "only unreasonable where they

are 'rebutted by clear and convincing evidence' and do not have support in the record." *Moritz v.

Woods*, 692 F. App'x 249, 253 (6th Cir. 2017) (quoting *Pouncy v. Palmer*, 846 F.3d 144, 158 (6th

Cir. 2017)) (internal quotation marks omitted). Additionally, "[f]actual determinations by state

courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1),

and a decision adjudicated on the merits in a state court and based on a factual determination will

not be overturned on factual grounds unless objectively unreasonable in light of the evidence

presented in the state-court proceeding[.]" *Ayers v. Hudson*, 623 F.3d 301, 308 (6th Cir. 2010)

(quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)) ("*Miller-El I*"). The burden of satisfying

AEDPA's standards rests with the petitioner. *See Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

IV.    **CLAIM ONE**

Petitioner's first claim is twofold.  He says that his convictions on felonious assault and failure to comply with the order or signal of a police officer violate the Double Jeopardy Clause because the State failed to establish that he had a separate animus to injure each of the officers involved (*Petition*, Doc. 1, PAGEID # 6–7), and because the crimes involved a single continuous act or offense with no separate animus.  (*See Reply*, Doc. 7, PAGEID # 757) ("[T]he Felonious Assaults and the Felony Failure to Comply happened at the same moment from one event and animus and they should merge together and not be separate punishments.")  As explained below, the Undersigned treats the two arguments as separate claims, finding one to be unexhausted and one to lack merit.

a.    **Exhaustion**

"As a necessary component of the exhaustion of state remedies doctrine, a petitioner's claim must be 'fairly presented' to the state courts before seeking relief in the federal courts." *Whiting v. Burt*, 395 F.3d 602, 612 (6th Cir. 2005) (citing *Baldwin v. Reese*, 541 U.S. 27 (2004)); *Picard v. Connor*, 404 U.S. 270, 275 (1971).  In order to satisfy the exhaustion requirement in habeas corpus, a petitioner must fairly present the substance of his constitutional claim to the state courts.  *Anderson v. Harless*, 459 U.S. 4, 6 (1982); *Picard*, 404 U.S. at 275.  Although the fair presentment requirement is a rule of comity, not jurisdiction, *see Castille v. Peoples*, 489 U.S. 346, 349 (1989); *O'Sullivan v. Boerckel*, 526 U.S. 838, 844–45 (1999), it is rooted in principles of comity and federalism designed to allow state courts the opportunity to correct the State's alleged violation of a federal constitutional right that threatens to invalidate a state criminal judgment.

A petitioner fairly presents the "substance of his federal habeas corpus claim" when the state courts are afforded sufficient notice and a fair opportunity to apply controlling legal principles

to the facts bearing upon the constitutional claim. *Harless*, 459 U.S. at 6. On the other hand, a petitioner does not fairly present a claim if he presents an issue to the state courts under one legal theory and set of facts, and then presents the issue to the federal courts under a different legal theory or a different set of facts. Rather, a petitioner must present to the federal court essentially the same facts and legal theories that were considered and rejected by the state courts. *See, Waterford v. Washburn*, 455 F. Supp. 3d 579, 599 (M.D. Tenn. 2020) (citing *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998)). "It cannot rest on a legal theory that is separate and distinct from the one previously considered and rejected in state court." *Id*.

Petitioner did not argue in the Ohio Court of Appeals that his convictions violate the Double Jeopardy Clause because the State failed to establish he had a separate intent to injure each of the officers involved. He only argued that the acts of felonious assault and failure to comply with the order or signal of a police officer involved one criminal offense. (*See Appellant's Brief*, Doc. 5, PAGEID # 120–21). Thus, Petitioner failed to present this claim to the state courts. Further, Petitioner has failed to establish cause for this failure. Petitioner thereby has waived his claim that his convictions violate the Double Jeopardy Clause on the basis that the State failed to establish he had a separate intent to injure each of the officers. *See Cowans v. Bagley,* 236 F.Supp.2d 841, 857 (S.D. Ohio 2002) ("Although a certain degree of tinkering is permissible, a petitioner does not fairly present a claim if he presents an issue to the state courts under one legal theory, and then presents the issue to the federal courts under a different legal theory.") (citing *Lorraine v. Coyle*, 291 F.3d 416, 425 (6th Cir. 2002) (citing *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998)); *Lott v. Coyle*, 261 F.3d 594, 607, 609 (6th Cir. 2001), *Lott v. Bagley*, 534 U.S. 1147 (2002)). As a result, the Court will not address the merits of that argument here.

**b. Merits**

Turning to the exhausted part of claim one, the state appellate court rejected Petitioner's assertion that his convictions on felonious assault and failure to comply with the order or signal of a police officer violate the Double Jeopardy Clause because they involved one criminal act as follows:

> {¶6} In Appellant's first assignment of error he claims consecutive sentencing was erroneous, here. He challenges his sentence, contending that his sentence for felony failure to comply should have merged with his sentences for felony assault, because they are allied offenses of similar import. Appellant contends that the felony assault on a police officer came as he was attempting to flee, and thus his convictions for failure to comply and for assault on a police officer stem from the same, single event and should have been merged.

> {¶7} In response, the state argues that after Appellant originally fled the scene and the pursuit by police halted, this resulted in one completed action, resulting in a charge for failure to comply. The two charges of felony assault on a police officer occurred when Appellant later drove his vehicle at police until they took cover behind a tree and Appellant intentionally struck the tree with his vehicle. The state argues this is reinforced by the fact that, rather than following his trajectory of continuing down the hill to the main road after striking the tree with his vehicle, Appellant attempted to flee by turning around and driving back up the hill in the opposite direction. Hence, his failure to comply arose out of a separate event from his attempt to assault the two officers, an event that was completed when they called off their pursuit.

> {¶8} The question of whether crimes are allied offenses arises from the Double Jeopardy Clause of the Fifth Amendment of the U.S. Constitution, which protects individuals from multiple punishments for the same offense. *Brown v. Ohio*, 432 U.S. 161, 165, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977). R.C. 2941.25 codifies this protection under Ohio law:

> Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

> {¶9} Whether two offenses are allied offenses is a question of law and an appellate court must conduct a de novo review. *State v. Burns*, 7th Dist. Mahoning No. 09 MA 193, 2012-Ohio-2698, ¶ 60. At the outset, we note that both Appellant and the state cite caselaw that pertains to the Ohio Supreme Court's previous two-part test for allied offenses set forth in *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061. The test in *Johnson* was subsequently modified and expanded in *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892. In *Ruff*, the Ohio Supreme Court created a three-part, fact-specific analysis that looks

11

at the defendant's conduct, the animus, and the import. *Id*. at ¶ 26. Specifically, a court must consider: (1) whether the offenses are dissimilar in import or significance, meaning whether each offense caused a separate and identifiable harm; (2) whether the offenses were separately committed, and (3) whether the offenses were considered with separate animus or motivation. *Id*. If the answer to any of these questions is "yes," then the offenses do not merge. The fact-specific nature of the analysis requires a case-by-case consideration rather than application of a bright-line rule. *Id.*

{¶10} The offenses at issue are felonious assault of a police officer and felony failure to comply with an order or signal of a police officer. R.C. 2921.331, felony failure to comply with order or signal of police, provides:

(B) No person shall operate a motor vehicle so as willfully to elude or flee a police officer after receiving a visible or audible signal from a police officer to bring the person's motor vehicle to a stop.

* * *

(5)(a) A violation of division (B) of this section is a felony of the third degree if the jury or judge as trier of fact finds any of the following by proof beyond a reasonable doubt:

* * *

(ii) The operation of the motor vehicle by the offender caused a substantial risk of serious physical harm to persons or property.

{¶11} R.C. 2903.11(A)(2) and (D)(1)(a) govern felony felonious assault of a police officer, and states:

(A) No person shall knowingly do either of the following:

* * *

(2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance.

* * *

(D)(1)(a) Whoever violates this section is guilty of felonious assault. Except as otherwise provided for in this division or division (D)(1)(b) of this section, felonious assault is a felony of the second degree. If the victim of a violation of division (A) of this section is a peace officer or an investigator of the bureau of criminal identification and investigation, felonious assault is a felony of the first degree.

{¶12} Appellant argues that his failure to comply "with the original order to stop by police, was the same action that resulted in his being charged with felonious assault." (Appellant's Brf., p. 7.) Appellant's merger argument essentially hinges on the assertion that his failure to comply began when the deputies first encountered him on Route 250 and persisted through Appellant temporarily alluding police, hiding in the woods, and continued to Appellant's attempt to strike the deputies with his vehicle before fleeing again. Appellant argues that the incident involved one continuous course of conduct from first encountering the officers to his later fleeing on foot after striking the trees behind which they took cover. The record does not support Appellant's contention.

{¶13} Deputy Sedgmer testified at trial that the deputies first made contact with Appellant on U.S. Route 250. Both officers activated their lights and sirens and Appellant fled, heading westward on U.S. Route 250. This pursuit continued for several minutes, during which time Appellant exited onto a dirt road at approximately 40 miles per hour. He then turned off into a field where boats and vehicles were stored. He utilized the field as a shortcut on to North Bay Road, a residential area, where he was pursued for about three minutes while traveling at approximately 70 miles per hour before the deputies called off the chase due to a substantial risk of injury to the public. The active pursuit concluded. The deputies then traveled to Appellant's residence to interview Appellant's girlfriend and possibly await Appellant's return, as Appellant's whereabouts were unknown. Ranger Noice was already at Appellant's residence.

{¶14} Deputy Sedgmer testified that while they were at Appellant's residence, a call came in through the dispatcher that Appellant's Jeep was spotted by an area resident at the top of a hill on an old logging road. Deputy Sedgmer testified,

We immediately assumed it was [Appellant] and that's how, you know, we had missed him. He had taken that four wheeler trail and we drove right past it. And the ranger, Ranger Noice, had been coming in stated to me prior that he never saw him come back out so we assumed that that was him and we immediately left [Appellant's] residence to go back to where that four wheeler trail was at or the trail that went up into the woods.

(10/4/18 Tr., p. 143.)

{¶15} At that point, the deputies and Ranger Noice left Appellant's residence and drove to the area where the vehicle was spotted. The deputies arrived first, got out of their vehicles, and began walking together uphill on the trail. (10/4/18 Tr., p. 144.) The deputies used their flashlights intermittently in order to find their footing as they walked along the trail, hoping to avoid detection by Appellant. Appellant's vehicle continued sitting stationary on top of the hill with the headlights on. When the deputies got within 50 yards of the vehicle, Deputy Sedgmer testified that he aimed his flashlight at the vehicle and spotted Appellant in the driver's seat. As the

13

vehicle began moving toward them, the deputies transitioned from their flashlights to their firearms. Deputy Sedgmer testified, "as he approached us he got extremely close to us we were yelling, 'Stop. Sheriff's office. Stop. Sheriff's office. Stop.'" (10/4/18 Tr. pp. 146-147.) Appellant did not stop his vehicle. The deputies noted there were trees directly to their right. Deputy Sedgmer testified:

As we start stepping to our right the vehicle was from me to probably the desk away and he swerves to his left so towards my direction, myself and Deputy Chaney's direction. We get behind a tree and he comes to a stop up against that tree. It was within -- I could touch the hood of his car. It was at that point my gun is on him with my flashlight. I can see him in the driver's seat. Deputy Chaney reaches over and grabs ahold of the passenger's side door and tries to yank it open. As he does that Mr. Ursic is revving his engine, which I left that part out. I apologize. He was revving his engine as if to try and back back up again and he begins to move back to back up like he's going to attempt to turn around and go back up the hill. * * * When he went back up the hill he had his jeep I want to say red lined. He had it pegged to where it was constantly backfiring the whole way up the hill * * * throwing mud, rocks and debris all over us.(10/4/18 Tr., pp. 147-148.)

{¶16} The law on merger remains fact-specific under *Ruff*. Where there are multiple offenses and the resulting harm is "separate and identifiable," the offenses are of dissimilar import. *Id.* at ¶ 1.

{¶17} Contrary to Appellant's assertions, the facts in this case do not demonstrate one continuous incident which began with the encounter on Route 250 and encompassed the actions that took place on the logging road. This record reveals that the initial encounter concluded when pursuit was ended due to the officers' concerns about public safety. The second encounter on the hill was distinct both in time and place. Rather than fleeing, Appellant appeared to be hiding or perhaps awaiting the arrival of the deputies as he sat in his vehicle on top of the hill with his headlights on. Appellant's decision to drive toward the deputies when they signaled from fifty yards away was clearly not an attempt to flee. Evidence shows it was an overt attempt to harm the deputies. Continuing to drive his vehicle downhill toward two armed deputies who were on foot and swerving in their direction in an attempt to strike them as they took cover is the exact opposite of fleeing. This reveals "separate and identifiable" conduct which served as the basis for the separate offenses at issue. The offenses were committed at separate times, as the deputies had called off their first encounter leading to pursuit and went to Appellant's residence to begin their investigation. Their second encounter with Appellant, begun due to a second 911 call, did not involve a pursuit because Appellant was not actively engaged in flight. Again, these offenses took place at different times and locations and involved separate facts. Thus, under the *Ruff* test and the facts of this case, the offenses are not allied offenses of similar import. The trial court was correct in not merging the offenses for sentencing purposes.

{¶18} Appellant's first assignment of error is without merit and is overruled.

14

*State v. Ursic*, 2019 WL 6724550, at *2-4.

Although the Ohio Court of Appeals limited its analysis to application of Ohio's allied offenses statute, Ohio Rev. Code. § 2941.25, that analysis is "entirely dispositive" of a claim under the Double Jeopardy Clause, and the state court's decision obtains a deferential standard of review under the AEDPA. *See Henley v. Marquis,* No. 18-4209, 2019 WL 9047276, at *7 (6th Cir. Dec. 13, 2019) (citing *Jackson v. Smith,* 745 F.3d 206, 213 (6th Cir. 2014)); *McKinney v. Warden, Warren Corr. Inst.*, No. 2:14-cv-1992, 2017 WL 2336009, at *11 (S.D. Ohio May 30, 2017) (citations omitted).

The Double Jeopardy Clause of the Fifth Amendment, made applicable to the states through the Fourteenth Amendment, provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The clause has been interpreted as protecting criminal defendants from successive prosecutions for the same offense after acquittal or conviction, as well as from multiple punishments for the same offense. *Brown v. Ohio*, 432 U.S. 161, 165 (1977). The traditional test for a double jeopardy claim is the "same elements" test set forth in *Blockburger v. United States*, 284 U.S. 299, 304 (1932) (requiring the court to determine whether each charged offense "requires proof of an additional fact which the other does not"). The *Blockburger* test is designed to address the situation where closely connected conduct results in multiple charges under separate statutes. Under *Blockburger*, the critical question is whether, in reality, the multiple charges constitute the same offense. Thus, the *Blockburger* test focuses on whether the statutory elements of the crimes charged are duplicative. If they are, there is a constitutional problem.

But "[w]here two offenses are the same for *Blockburger* purposes, multiple punishments can be imposed if the legislature clearly intended to do so." *Bates v. Crutchfield*, No. 1:15-cv-817,

15

WL 7188569, at *5 (S.D. Ohio Dec. 12, 2016) (citing *Albernaz v. United States*, 450 U.S. 333, 344 (1981); *Missouri v. Hunter*, 459 U.S. 359, 366 (1983); *Ohio v. Johnson*, 467 U.S. 493, 499 (1984); *Garrett v. United States*, 471 U.S. 773, 779 (1985); *White v. Howes*, 586 F.3d 1025, 1035 (6th Cir. 2009)).  Thus, "[e]ven if the crimes are the same under *Blockburger*, if it is evident that a state legislature intended to authorize cumulative punishments, a court's inquiry is at an end." *Volpe v. Trim*, 708 F.3d 688, 697 (6th Cir. 2013) (citing *Johnson*, 467 U.S. at 499 n. 8; *Hunter*, 459 U.S. at 368–69).  "Specifically, '[w]ith respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended.'"  *Grable v. Turner*, No. 3:16-cv-273, 2016 WL 7439420, at *6 (S.D. Ohio Dec. 27, 2016) (quoting *Jackson v. Smith*, 745 F.3d 206 (6th Cir. 2014)) (quoting *Missouri v. Hunter*, 459 U.S. 359, 366 (1983)).  Importantly, "[w]hen assessing the intent of a state legislature, a federal court is bound by a state court's construction of that state's own statutes."  *Id*. (quoting *Volpe v. Trim*, 708 F.3d 688 (6th Cir. 2013)) (citing *Banner v. Davis*, 886 F.2d 777, 780 (6th Cir. 1989)).

In view of the facts of this case, and applying the test set forth in *Blockburge*r, this Court is not persuaded that the state appellate court's conclusion that evidence reflected separate criminal acts was unreasonable so as to justify federal habeas corpus relief.  To the contrary, the state appellate court thoroughly and reasonably analyzed the relevant state statutes and the evidence presented at trial.  As such, Petitioner has failed to establish that the state appellate court's decision rejecting his Double Jeopardy Claim contravened or unreasonably applied federal law or resulted in an unreasonable determination of the facts in light of the evidence presented.

Claim one is without merit.

## V.    CLAIM TWO

In claim two, Petitioner asserts that the evidence is constitutionally insufficient to sustain his felonious assault convictions. The state appellate court rejected this claim on the merits:

{¶19} In his second assignment of error, Appellant argues sufficiency [] of the evidence.

{¶20} "Sufficiency of the evidence is a legal question dealing with adequacy." *State v. Pepin–McCaffrey,* 186 Ohio App.3d 548, 2010-Ohio-617, 929 N.E.2d 476, ¶ 49 (7th Dist.), citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).

{¶21} "Sufficiency is a term of art meaning that legal standard which is applied to determine whether a case may go to the jury or whether evidence is legally sufficient to support the jury verdict as a matter of law." *State v. Draper,* 7th Dist. Jefferson No. 07 JE 45, 2009-Ohio-1023, ¶ 14, citing *State v. Robinson*, 162 Ohio St. 486, 124 N.E.2d 148 (1955). To discharge the state's burden when prosecuting a criminal offense, "'probative evidence must be offered' on 'every material element which is necessary to constitute the crime.'" *State v. Billman*, 7th Dist. Monroe Nos. 12 MO 3, 12 MO 5, 2013-Ohio-5774, ¶ 8, citing *State v. Martin*, 164 Ohio St. 54, 57, 128 N.E.2d 7 (1955). In a sufficiency review, a reviewing court does not determine "whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction." *State v. Rucci*, 7th Dist. Mahoning No. 13 MA 34, 2015-Ohio-1882, ¶ 14, citing *State v. Merritt*, 7th Dist. Jefferson No. 09 JE 26, 2011-Ohio-1468, ¶ 34.

***

{¶24} Appellant takes issue with several portions of the deputies' testimony, claiming the state failed to establish beyond a reasonable doubt that Appellant knowingly intended to cause them physical harm. Appellant asserts that the testimony from deputies that they were switching their flashlights on and off while on the logging trail could have caused Appellant to be blinded or disoriented, rendering him unable to see where he was driving. Appellant also argues that Deputy Sedgmer's testimony that Appellant had his headlights on them as they approached contradicts Deputy Sedgmer's testimony that Appellant "looked directly at us" when they approached, as the headlights would have rendered Deputy Sedgmer unable to see into the vehicle. (10/4/18 Tr., p. 202.) Finally, Appellant contends that the testimony from both deputies that Appellant backed up and drove in the other direction, ultimately abandoning the vehicle and fleeing on foot, also shows Appellant did not knowingly intend to cause harm to the deputies and further demonstrates the state's failure to establish all the necessary elements of felony assault on a police officer.

{¶25} As the dash camera video was played to the jury, Deputy Sedgmer testified regarding the pursuit. The dash camera video, which begins after the first 911 call

as the deputies were initially traveling to Appellant's residence, shows the initial stop and Appellant's actions in fleeing from the officers. It shows the deputies traveling at a high rate of speed with lights and sirens activated. At 8 minutes 22 seconds, with lights and sirens still activated, the deputies encounter Appellant's Jeep at an intersection. The video follows the pursuit down US Route 250, then the turn on to the dirt road, through the field and back on to a residential street. Other vehicles can be seen moving off of the road. At 11 minutes 10 seconds the deputies, speaking through radio dispatch, express concern about the high rate of speed as they traveled through a residential neighborhood, and noted that Appellant would be considered armed and dangerous. At 11 minutes 20 seconds the deputies acknowledge that they lost sight of Appellant's vehicle. Deputy Sedgmer calls off the pursuit because he does not want to cause a "Code 4 which is a traffic accident with injuries." (10/4/18 Tr., p. 167.) The deputies instituted a search of the area with their spotlights before going to Appellant's residence.

{¶26} The state presented testimony from Deputy Chaney regarding both incidents. Deputy Chaney corroborated Deputy Sedgmer's testimony regarding the attempted stop of Appellant and the subsequent pursuit. He also testified that both deputies returned to Appellant's home after the chase was called off. Approximately 15 minutes later, they were notified by dispatch that a second 911 call had been made regarding the vehicle, which was spotted on the logging road. Deputy Chaney described the incident on the logging road. He testified that as they walked up the road they saw headlights and could hear an engine revving loudly. He testified that both deputies were using the flashlights attached to their firearms and turning them on intermittently to see where they were walking, but also to attempt to avoid detection by leaving them on. He testified that the Jeep was "trying to creep his way down" the hill, as it was steep and rutted. (10/4/18 Tr., p. 202.) When the Jeep was approximately fifty yards away with its headlights shining on the deputies, Deputy Chaney testified that they turned on their flashlights and announced their presence. The Jeep continued to come toward them. According to Deputy Chaney, "we looked directly at him, he looked directly at us, he then continued to come our way." (10/4/18 Tr., p. 202.) Deputy Chaney testified, "I recall the engine revving. He began to drive straight towards us." (10/4/18 Tr., p. 202.) They demanded he stop and deployed their weapons. "It was apparent that he was not going to [stop] so at the last split second we seen a tree, got behind the tree and the jeep then came right up to us in an obvious attempt to hit us before trying to get turned around." (10/4/18 Tr., p. 203.) Photos of the Jeep stuck in the mud on the logging road taken the following morning were admitted at trial. The jury was also taken out to view the logging road.

{¶27} The state presented video from a body camera worn by Ranger Noice during the incident on the logging road. Ranger Noice testified at trial that he arrived shortly after Deputies Sedgmer and Chaney. A review of the body camera video shows the two deputies walking ahead up the logging road intermittently using their flashlights. Ranger Noice also turned his flashlight on intermittently. At approximately one minute and five seconds into the video, a pair of headlights is

seen uphill at a distance. Ranger Noice can be heard saying that the Jeep is coming down the hill. At one minute 47 seconds one of the deputies can be heard over the radio saying that Appellant almost hit them with the vehicle and that Appellant was attempting to drive back up the hill.

{¶28} Appellant challenges the sufficiency of the evidence regarding both the felony failure to comply and felony assault on police officers. When viewing the evidence in a light most favorable to the state (the testimony from both deputies, Ranger Noice, the dash camera video, body camera video, and photographs of the scene) this evidence, if believed, was sufficient to establish that Appellant acted knowingly beyond a reasonable doubt.

*State v. Ursic*, 2019 WL 6724550, at *5–7.

The Fourteenth Amendment's Due Process clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). The question in a sufficiency of the evidence claim is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). The *Jackson* standard must be applied "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Brown v. Palmer*, 441 F.3d 347, 351 (6th Cir. 2006) (quoting *Jackson*, 443 U.S. at 324 n.16). Additionally, when determining if the evidence is sufficient to support a petitioner's conviction, the reviewing court must view the evidence in the light most favorable to the prosecution. *Wright v. West*, 505 U.S. 277, 296 (1992) (citing *Jackson,* 443 U.S. at 319).

Further, "[i]n reviewing sufficiency of the evidence claims under [] AEDPA, the court gives the state court's judgment a double layer of deference." *Black v. Robinson*, No. 19-4147, 2020 WL 2730800, at *1 (6th Cir. Mar. 27, 2020*), cert. denied*, 141 S. Ct. 674 (2020) (citing *Brown v. Konteh*, 567 F.3d 191, 204-05 (6th Cir. 2009)).

First, the court must determine whether, viewing the evidence in the light most favorable to the prosecution, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. at 205 (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). In making this determination, the court does "not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute [its] judgment for that of the jury." *Id*. Second, even if the court concludes that a rational trier of fact could not have found the petitioner guilty beyond a reasonable doubt, it must defer to the state court's sufficiency determination as long as it is not unreasonable. *Id*. (citing 28 U.S.C. § 2254(d)(2)).

*Id*.  "[A] court may sustain a conviction based upon nothing more than circumstantial evidence." *Stewart v. Wolfenbarger*, 595 F.3d 647, 656 (6th Cir. 2010).

Here, Petitioner argues that the videotapes of the events at issue show that he had no intent to cause harm, slowed down his vehicle, and returned up the hill after police ordered him to stop. Petitioner disputes the factual findings of the state appellate court as well as the testimony of police.  (*Petition*, Doc. 1, PAGEID # 14–17; *Reply*, Doc. 7, PAGEID # 758–64).  Petitioner has failed to rebut the presumption of correctness afforded to the factual findings of the state appellate court.  28 U.S.C. § 2254(e)(1).  This Court has reviewed the record, including the relied-upon videotapes.  Nothing contained therein assists him in establishing a claim of insufficiency of the evidence.  So Petitioner cannot meet AEDPA's high standards, and claim two is without merit.

**VI.    DISPOSITION**

For the foregoing reasons, Petitioner's Motion for a Stay (Doc. 4) is **DENIED**, and it is **RECOMMENDED** that this action be **DISMISSED.**

<u>**PROCEDURE ON OBJECTIONS**</u>

If any party objects to this *Report and Recommendation*, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A judge of this Court shall make a *de novo* determination of those

portions of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo,* and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation.  See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

IT IS SO ORDERED.

Date: August 20, 2021

/s/ Kimberly A. Jolson
KIMBERLY A. JOLSON
UNITED STATES MAGISTRATE JUDGE